UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**     **CRIMINAL ACTION**

**VERSUS**     **NO: 23-224**

**TEVIN BORNES**     **SECTION "H"**

### ORDER AND REASONS

Before the Court is Defendant Tevin Bornes's Motions to Dismiss Count Two (Doc. 54) and Count Four (Doc. 55) of the Indictment. For the following reasons, Defendant's Motion to Dismiss Count Two of the Indictment (Doc. 54) is **DENIED** and Defendant's Motion to Dismiss Count Four of the Indictment (Doc. 55) is **DENIED**.

### BACKGROUND

The charges in the Indictment arise out of a search of Tevin Bornes's home by the Kenner Police Department that took place on July 31, 2023, following surveillance of Bornes and a traffic stop during which law enforcement confirmed Bornes's residence and found drug paraphernalia. During the execution of the search warrant, law enforcement officers recovered drugs[1] and four loaded guns.[2]

---

[1] Law enforcement seized 12.5 grams of marijuana, 47.74 grams of pure crystal methamphetamine, 9.75 grams of cocaine base, 137.22 grams of methamphetamine, and 14.5 grams of cocaine hydrochloride.

[2] Law enforcement seized a Glock Model 22, .4 caliber semi-automatic pistol equipped with a machinegun conversion device; a Pioneer Arms Model Sporter 7.62 mm caliber semi-

Count Two of the Indictment charges Defendant with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). Count Four of the Indictment charges Defendant with felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1) after being convicted of a crime punishable by imprisonment for at least one year. The Indictment alleges that Defendant's first predicate offense was a conviction in January 2021 for possession with the intent to distribute cocaine in violation of Louisiana Revised Statute 40:967A(1).[3]

Defendant has filed a Motion to Dismiss Count Two of the Indictment, contending that the "in furtherance" element of a § 924 (c)(1)(A)(i) violation is not satisfied in his case. Defendant has also filed a Motion to Dismiss Count Four of the Indictment, asserting that § 922(g)(1) violates the Second Amendment facially and as applied to him. The Government opposes both motions.[4] The Court will now consider each motion in turn.

## LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b), a party may challenge an indictment for failing to state an offense. "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."[5] In this circuit, "[t]he propriety of granting a motion to dismiss an indictment . . . is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact . . . . If a question of law is involved, then consideration

---

 automatic rifle; a Glock Model 23, .40 caliber semi-automatic pistol; and a Del-Tron DTI-15, 5.56 caliber semi-automatic pistol.

[3] Doc. 1 at 2–3.
[4] Doc. 57.
[5] FED. R. CRIM. PRO. 12.

of the motion is generally proper."[6] A court must take the allegations of the indictment as true and determine whether an offense has been stated.[7] A defendant may not challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence.[8] A court may, however, apply undisputed facts to resolve a question of law with a trial of the general issue.[9]

## LAW AND ANALYSIS

### 1. Count Two

First, Defendant seeks dismissal of Count Two of the Indictment on the ground that the Government has not satisfied one element essential to finding that Defendant's gun possession was in furtherance of drug trafficking.[10] Applying the Fifth Circuit Court of Appeals "in-furtherance" analysis from *United States v. Ceballos-Torres*,[11] Defendant concludes that his possession of a weapon was not related to the furtherance of drug trafficking and should therefore be dismissed. The Government opposes, asserting that Defendant does not argue there is any deficiency in the Indictment, but rather argues that the facts before the Court do not support a conclusion that the gun was possessed in furtherance of a drug trafficking offense.

In this motion, Defendants invite the Court to engage in what can only be characterized as the criminal equivalent of the civil motion for summary judgment. Defendant states that when seeking to convict a defendant under 18 U.S.C. § 924(c)(1)(A)(i), the Government must "prove: (1) a drug-trafficking

---

[6] United States v. Flores, 404 F.3d 320, 324 (5th Cir. 2005).
[7] United States v. Fontenot, 665 F.3d 640, 644 (5th Cir. 2011).
[8] United States v. Mann, 517 F.2d 259, 267 (5th Cir. 1975).
[9] *Flores*, 404 F.3d 320.
[10] Doc. 54-1 at 1.
[11] 218 F.3d 409 (5th Cir. 2000).

crime was committed; (2) the defendant was in possession of a firearm, and, (3) possession of the firearm furthered the drug trafficking crime."[12] Defendant then cites the factors that courts consider when analyzing the third element, including such facts as the type of drug activity being conducted, whether the defendant legally possessed the weapon, the proximity of the firearm to contraband or related profits, and whether the firearm was accessible to the defendant at the time of the offense.[13] Defendant goes on to apply his version of the facts to these factors, asserting that he possessed the firearms for personal protection while at his home; that the forearms was accessible to him during the search; and that while the various drugs found were contraband, Defendant possessed them to consume for his own personal use, not with the intent to traffic or distribute them.[14] In its Opposition, the Government notes that whether Defendant possessed the firearms in furtherance of a drug trafficking crime is an issue for the jury to decide.[15]

It is well-settled that a defendant may not challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence.[16] Federal Rule of Criminal Procedure 12 allows the Court to dismiss an indictment only if it fails to state an offense. "The court may not dismiss an indictment based on the sufficiency of evidence supporting the allegations in the indictment."[17] "[W]eighing the evidence is the function of the jury."[18] Accordingly, it is inappropriate for the Court to consider the merits of this Rule 12 motion, as the facts remain contested.

---

[12] Doc. 54-1 at 1–2 (citing *United States v. McGinnis*, 384 F. App'x. 792 (10th Cir. 2002)).
[13] *Id.* at 2–4 (citing *Ceballos-Torres*, 218 F.3d at 414–15).
[14] *Id.* at 4–5.
[15] Doc. 57 at 6.
[16] *Mann*, 517 F.2d at 267 (5th Cir. 1975).
[17] United States v. Kohll's Pharmacy & Homecare Inc., No. 2:17-CR-00039, 2017 WL 2951580, at *2 (W.D. La. July 6, 2017).
[18] United States v. Jackson, No. 13-131, 2014 WL 1664901, at *2 (E.D. La. Apr. 25, 2014).

...

The Court finds that the Indictment sufficiently states an offense, as it clearly alleges that the Defendant possessed a weapon in furtherance of a drug trafficking crime. While Defendant's assertion that he possessed the firearms for self-defense and was not engaging in drug trafficking, as well as his description of where the firearms were in the home may or may not be helpful to the jury at trial, the Court may not consider it in ruling on a Rule 12 motion. Accordingly, there are no grounds for dismissal of this charge against Defendant.

### 2. Count Four

Defendant also seeks dismissal of Count Four of the Indictment, arguing that considering recent United States Supreme Court and Fifth Circuit precedent, 18 U.S.C. § 922(g)(1) is unconstitutional facially and as applied to him. The Court will detail relevant Second Amendment law before turning to Defendant's challenges.

### a. The State of Second Amendment Law

The Second Amendment provides that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[19] In *District of Columbia v. Heller*, the Supreme Court interpreted the language of the Second Amendment clause-by-clause, determining that while "the Second Amendment right is exercised individually and belongs to all Americans" it particularly "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."[20] In an effort to clarify that it did not find the right to bear arms "unlimited," the Court provided an oft-cited list of non-exhaustive "presumptively lawful regulatory measures" upon which courts

---

[19] U.S. CONST. amend. II.
[20] 554 U.S. 570, 581, 635 (2008).

could call in the future.[21] It stated that *Heller* " should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," among others.[22]

In *New York State Rifle & Pistol Association v. Bruen*, the Supreme Court re-visited *Heller*, enunciating a new standard for applying the Second Amendment.[23] It held

> that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[24]

While the Court stated that "[t]he Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions,"[25] some Justices included disclaimers that enduring bans on felons possessing firearms were still in effect.[26]

The Supreme Court recently upheld the constitutionality of 18 U.S.C. § 922(g)(8), a prohibition on possessing a firearm while subject to a domestic

---

[21] *Id.* at 626–27 n.26.
[22] *Id.*
[23] 597 U.S. 1 (2022).
[24] *Id.* (quoting Konigsberg v. State Bar of Cal.*,* 366 U.S. 36, 50 n.10 (1961)).
[25] *Id.* at 70 (quoting *Heller*, 554 U.S. at 581).
[26] *Id.* at 81 (Kavanaugh, J., concurring) (Roberts, J. joining) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." (quoting *Heller*, 554 U.S. at 616)); *Id.* at 72 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *MacDonald* or *Chicago* about restrictions that may be imposed on the possession or carrying of guns.").

violence restraining order in *United States v. Rahimi*.[27] Applying the logic of *Bruen*, the Court concluded that § 922(g)(8) "fits comfortably" in the Nation's tradition of "preventing individuals who threaten physical harm to others from misusing forearms."[28]

The Court's decision in *Rahimi* turned on a determination that surety and "going armed" laws at the time of the Founding were proper historical analogues to § 922(g)(8), emphasizing that *Bruen* does not require courts to find "historical twin" to the modern conduct before them.[29] Surety laws "provided a mechanism for preventing violence before it occurred" by requiring individuals to post bonds when there was a "probable ground to suspect [] future misbehavior."[30] These laws aimed at "prevent[ing] all forms of violence, including spousal abuse" and the misuse of firearms.[31] "So-called 'going armed' laws prohibited 'riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land. Such conduct justified permanent disarmament because it 'disrupted the public order and led almost necessarily to actual violence.'"[32]

In comparing these laws to § 922(g)(8), a majority of the Court found that both laws did not "broadly restrict arms used by the public generally," and were put in place to prevent future harm.[33] Additionally, the Court found that that "if imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament

---

[27] 602 U.S. 680.
[28] *Id.* at 690.
[29] *Id.* at 699–700.
[30] *Id.* at 695.
[31] *Id.*
[32] United States v. Wilson, No. CR 22-238, 2024 WL 4436637, at *5 (E.D. La. Oct. 6, 2024) (Long, J.) (quoting *Rahimi*, 602 U.S. at 697).
[33] *Rahimi*, 602 U.S. at 698.

that § 922(g)(8) imposes is also permissible."[34] Taken together, the Court concluded that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others."[35]

The present case concerns § 922(g)(1), a ban on all firearm possession by anyone that has been convicted of a crime with a term of imprisonment that exceeds one year. The Supreme Court has not directly addressed *Bruen*'s impact on the constitutionality of § 922(g)(1). As such, this Court looks to its the Fifth Circuit's decision in *United States v. Diaz* and its own recent decisions for instruction.[36]

In *Diaz*, applying *Bruen*'s two-part test, the court first determined that Diaz was part of "the people" described in the text of the Second Amendment, regardless of his status as a convicted felon.[37] The court found that *Bruen*'s two-part test could "effectively [be] collapsed into one question: whether the law is consistent with our Nation's history of firearm regulation."[38] When the court moved on to evaluate whether § 922(g)(1) as applied to the defendant, Diaz, was consistent with the Nation's tradition of regulating firearm use, the court considered Diaz's predicate offenses, including theft.[39] The Fifth Circuit found that several colonial era laws "severely punish[ed] people like Diaz who had been convicted of theft," often with execution.[40] The court stressed that capital punishment laws such as this carried a comparable purpose to § 922(g)(1)'s firearm restriction in that both sought to "deter violence and

---

[34] *Id.* at 683.
[35] *Rahimi*, 602 U.S. at 700.
[36] 116 F.4th 458.
[37] *Id.* at 466.
[38] *Id.* at 467 (citing *Rahimi*, 602 U.S. at 692).
[39] *Id.*
[40] *Id.* at 468–69.

lawlessness."[41] Considering the approach to achieve the shared goal of violence deterrence, the Fifth Circuit found that both the Founding era capital punishment and § 922(g)(1) permanently punished offenders because of their serious criminal history.[42] Finding that punishing those who committed crimes with permanent dispossession of their firearms passed muster under *Bruen*, the Fifth Circuit held that § 922(g)(1) was constitutional on its face and as applied to Diaz.[43]

While the Fifth Circuit concluded that § 922(g)(1) was constitutional on its face and as applied to Diaz, it explicitly did not foreclose the question of whether disarming for other felony convictions fits within the Nation's historical tradition.[44] As such, the Court turns to Defendant's facial and as-applied challenges to § 922(g)(1).

### b. Facial Challenge

Defendant asserts, in only one sentence of his motion, that § 922(g)(1) is facially unconstitutional.[45] "To sustain a facial challenge, 'the challenger must establish that no set of circumstances exists under which the statute would be valid.'"[46] Here, to sustain his facial challenge, Defendant must establish that "no set of circumstances exist under which" § 922(g)(1) is valid. As discussed above, the Fifth Circuit ruled that § 922(g)(1) was valid when applied to a defendant whose predicate offenses included possessing a firearm as a felon, like Defendant here.[47] Considering that the Fifth Circuit has held that §

---

[41] *Id.* at 469.
[42] *Id.* at 470. The Fifth Circuit also considered going-armed laws in the Founding era and the subsequent permanent dispossession of firearms as a result. *Id.* at 470-71.
[43] *Id.* at 471–72.
[44] *Id.* at 470 n.4.
[45] Doc. 55 at 1.
[46] *Diaz*, 116 F.4th at 471 (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).
[47] *Id.* at 472. As mentioned above, the defendant in Diaz's predicate offenses also included car theft and evading arrest, unlike Defendant Bornes. *Id.* at 462.

922(g)(1) is constitutional in at least one application, Defendant cannot show "that no set of circumstances exists under which [§ 922(g)(1)] would be valid."[48] Accordingly, Defendant's facial challenge fails.

### c. As-Applied Challenge

Defendant further contends that § 922(g)(1) is unconstitutional as applied to him.[49] Though Defendant's argument relies primarily on the fact that the weapons found in his home were for self-defense, he does not provide the Court with any further statements or evidence to support this assertion.[50] Rather, Defendant expounds on the burden that *Bruen* puts on the Government to show that § 922(g)(1) is constitutional as applied to him, implicitly asserting that it cannot meet this burden. In response, the Government applies the *Bruen* test to the facts before it, asserting that Defendant's predicate offense is analogous to Founding era capital crimes. As such, the Government contends that disarming Defendant is consistent with the Nation's history and tradition of firearm regulation.[51]

Under *Bruen*, the Court must first decide if "the Second Amendment's plain text covers" Defendant's conduct.[52] Here, it does. "The plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)[.]"[53] As such, the Fifth Circuit instructs that

> [t]he burden thus shifts to the government to demonstrate that regulating Diaz's possession of a firearm is "consistent with the Nation's historical tradition of firearm regulation." To satisfy this burden, the government must "identify a well-established and representative historical *analogue,* not a historical *twin.*" Evidence must be "relevantly similar" to the challenged law. In assessing

---

[48] *Salerno*, 481 U.S. at 749 (1987).
[49] Doc. 55 at 1.
[50] *Id.* at 4.
[51] Doc. 57 at 13.
[52] *Bruen*, 597 U.S. at 24.
[53] *Diaz*, 116 F.4th at 467.

10

similarity, we consider "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." The government identifies as relevant laws (1) focusing on how our Nation punished felons; and (2) disarming certain classes of persons.[54]

Accordingly, the Court considers Defendant's predicate offense. Defendant's criminal history includes possession with the intent to distribute cocaine.[55] To meet its burden of showing that there is a tradition of disarming someone with a criminal history comparable to Defendant's, the Government relies largely on Founding era laws that criminalize the possession and trafficking of contraband.

Stressing that the principles upon which Founding era laws were based do not differ from those of today's legislation, the Government asserts that both going armed laws and "felony drug-trafficking statutes seek to diffuse the risk of violence that so often accompanies another crime."[56] In support, the Government states that Founding era legislatures punished the trafficking of goods—"from stolen horses to purloined mail to counterfeit money and securities"—with death.[57] Following the logic of *Diaz* that disarmament of a felon is less severe than capital punishment, while both are still permanent, the Court finds that the Government's examples amount to "relevantly similar" evidence showing that the country has a tradition of punishing people who have been convicted of engaging in activities like trafficking contraband.[58]

---

[54] *Id.* (internal citations omitted).
[55] Doc. 1 at 2–3.
[56] Doc. 57 at 16.
[57] *Id.* at 13–14 (citing 6 William Waller Hening, THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA FROM THE FIRST SESSION OF THE LEGISLATURE, IN THE YEAR 1619, 130 (1819); *An Act to Establish the Post-Office and Post Roads within the United States*, § 17 1. Stat. 232, 237 (1792); and *An Act for the Punishment of Certain Crimes Against the United States*, §§ 115, 1 Stat. 112, 115 (1790)).
[58] *Diaz*, 116 F.4th at 469. The Court reiterates that the Government's inability to find exact Founding era laws that correspond to Defendant's offenses and punishments does not make their examples inapplicable to their argument. *Bruen*, 597 U.S. at 24.

Defendant argues that, despite his status as a felon, he is included in the Second Amendment's protected group of "all Americans" and, therefore, should not be denied his right to bear arms in self-defense.[59] The Government responds that there has been historical precedent for carving out prohibitions against those who are deemed to be dangerous, and argues that those engaged in drug trafficking fall into that category.[60] Courts have suggested that the most "robust view of the Second Amendment still provides 'that legislatures have the power to prohibit dangerous people from possessing guns.'"[61] Further, federal courts have acknowledged that violence often follows drugs and drug traffickers.[62] This connection is often heightened when guns are involved.[63] Here, Defendant's predicate felony conviction suggests that Defendant may pose a risk of violence or other danger to public safety. Accordingly, permanently disarming those, like Defendant, who have committed serious drug felonies—which could easily be associated with violence—is "consistent with the Nation's historical tradition of firearm regulation."[64]

Because the government has met its burden to show that applying § 922(g)(1) to Defendant "is consistent with this Nation's historical tradition of firearm regulation," Defendant's as-applied challenge fails.[65] The possession with the intent to distribute conviction implicates the safety and wellbeing of those in Defendant's community. As such, the Court finds that the Founding era principle of protecting citizens from harm undergirds the statutes under

---

[59] Doc. 55-1 at 2.

[60] Doc. 57 at 14.

[61] Leonard v. United States, No. 18-CR-20743-RAR-2, 2023 WL 2456042, at *10 n.7 (S.D. Fla. Mar. 10, 2023) (quoting Kanter v. Barr, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting)). *See Bruen*, 597 U.S. at 70 (quoting *Heller*, 554 U.S.at 581).

[62] United States v. Garcia, 797 F.3d 320, 321 (5th Cir. 2015).

[63] *See* Smith v. United States, 508 U.S. 223, 240 (1993) (endorsing Congress's assessment that "drugs and guns are a dangerous combination" worthy of legislation).

[64] *Bruen*, 597 U.S. at 24.

[65] *See Diaz*, 116 F.4th at 464.

which Defendant was convicted and § 922(g)(1). Accordingly, the Court finds that disarming Defendant is an appropriate prohibition under § 922(g)(1), considering the state of Second Amendment case law.

The Court notes that this holding is consistent with its own recent rulings and those from courts across the country regarding the constitutionality of § 922(g)(1) as applied to defendants who have predicate drug possession and/or trafficking convictions.[66]

---

[66] *See, e.g.*, United States v. Jenard Walton, No. CR 24-66, 2025 WL 259370, at * 6 (E.D. La. Jan. 17, 2025) (Milazzo, J.); *Wilson,* No. CR 22-238, 2024 WL 4436637, at *5 (E.D. La. Oct. 6, 2024) (Long, J.) (holding § 922(g)(1) constitutional as applied to a defendant with predicate drug offenses); United States v. Carter, No. CR 23-22, 2024 WL 4723236, at *3 (E.D. La. Nov. 8, 2024) (Brown, J.) (same); United States v. Jackson, 110 F.4th 1120, 1125–29 (8th Cir. 2024) (same); United States v. Canales, 702 F. Supp. 3d 322, 327–32 (E.D. Pa. 2023) (holding § 922(g)(1) constitutional as applied to a defendant with predicate drug convictions); United States v. Goins, 647 F. Supp. 3d 538, 554–55 (E.D. Ky. 2022) (holding § 922(g)(1) constitutional as applied to a defendant with predicate convictions for DUI and drug possession); United States v. Pearson, No. 22-CR-271, 2023 WL 6216527, at *3 (E.D. Pa. Sept. 25, 2023) (holding § 922(g)(1) constitutional as applied to defendant with predicate drug-distribution and firearm convictions); United States v. Blackshear, No. 23-CR-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) (same); United States v. Reichenbach, No. 4:22-CR-57, 2023 WL 5916467, at *8–10 (M.D. Pa. Sept. 11, 2023) (holding § 922(g)(1) constitutional as applied to defendant with predicate drug convictions); United States v. Wise, No. 21-CR-511, 2023 WL 6260038, at *4–7 (W.D. Pa. Sept. 26, 2023) (finding § 922(g)(1) constitutional as applied to defendant with one predicate drug-trafficking conviction). Many of those courts reason, as the Court has here, that "guns and drugs" are "a dangerous combination increasing the risk of violence addressed by Congress in dispossessing significant long-time drug dealers of firearms." *Pearson*, 2023 WL 6216527, at *3 (internal citation and quotation marks omitted); *see also, e.g.*, *Reichenbach*, 2023 WL 5916467, at *9 ("There are few crimes that pose a greater risk to the public than drug trafficking, and fewer still where the dangerous connection between the crime and possession of firearms is more present or better understood."); *Canales*, 702 F. Supp. 3d at 321 ("[D]isarming individuals . . . who have shown a proclivity toward drug trafficking[ ] serves the same purpose of protecting the public from unnecessary violence.").

## CONCLUSION

For the foregoing reasons, Defendant Tevin Bornes's Motion to Dismiss Count Two of the Indictment is **DENIED** and Defendant Tevin Bornes's Motion to Dismiss Count Four of the Indictment is **DENIED**.

New Orleans, Louisiana this 20th day of February, 2025.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**